# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50888-5-II |
| Respondent, | |
| v. | |
| YVETTE YAMAUCHI, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Yvette Yamauchi appeals her convictions for second degree burglary and first degree theft. She argues that the State committed prosecutorial misconduct during closing argument which prejudiced her. We hold that, because the State neither made an improper argument nor prejudiced her during closing argument, Yamauchi's claim fails. We affirm her convictions.

## FACTS

On December 22, 2015, the State charged Yamauchi with one count of second degree burglary and one count of first degree theft, alleging that she had burglarized and stolen more than $5,000 from a store in Vancouver. The following facts were testified to at trial.

Yamauchi was hired to work as an assistant store manager for the store in May 2015. She was provided keys that opened every door including the cash room and the front door, along with the code for the alarm system and the safe. Yamauchi was terminated from the store in August 2015. She did not return her keys to the store.

On September 20, 2015, city of Vancouver police were dispatched to a call at the store. Officer Gunnar Skollingsberg testified that he discovered that the safe in the cash room had been opened and money had been taken from the cash drawers. Darrell Armstrong, the store manager, testified that over $20,000 was taken from the safe.

George Jensen, the assistant manager, testified that the alarm company called to inform him of an opening of the store in the early hours of September 20, 2015. When he arrived at the store, he found that the lights were on and the front doors were unlocked. He testified that the lights in the store come on automatically after a manager's alarm code is entered. He inspected the store with police officers and discovered that the safe was emptied of all its cash money. He testified that he had closed the store the night before and locked the safe, and that someone would have to use the safe code to open the safe.

A surveillance video from the store showed a person clad in black unlock the front door of the store and go directly to the alarm panel. Armstrong testified that in September 2015, four people had keys to the front door of the store: himself, Jensen, Finance Supervisor Sean Simpson, and Yamauchi. Those same people had keys to every door in the store, including the cash room. Armstrong further testified that the person in the video was "a short person," and that the person knew the store layout. I Verbatim Report of Proceedings (VRP) at 187.

Brenton Smith, a loss prevention employee, testified that he was responsible for accounting for all keys to the store after the burglary. The only keys he could not account for was Yamauchi's.

Detective Michael Day was the primary investigating officer on the case. He reviewed the surveillance video from the store and testified that the suspect in the video was the same height as the security stanchions the suspect walked through. He testified that he measured the security

stanchions with a tape measure and found they were five feet tall. Detective Day narrowed his investigation to Yamauchi because she was the only person that had the keys, had the access codes, and was the correct height. Detective Day, while on cross examination, reiterated that he focused on Yamauchi because she had the access codes, the keys, "the height," and intimate knowledge of the building. II VRP at 363. He also testified that the most direct evidence of Yamauchi being the burglar was her height.

During closing arguments, the prosecutor focused on the small pool of potential suspects and emphasized that Yamauchi was the only individual who met all of the required characteristics. The State argued during closing:

> It was an inside job and that left a very, very, small group of potential suspects. And only one of those suspects kicks (sic) all those boxes. The Defendant. Same height – only five feet. Same as the burglar.

III VRP at 476. Yamauchi's attorney objected to facts not in evidence, but the trial court overruled the objection. The trial court then reminded the jury that "statements by counsel if not supported by evidence, disregard it. If it is supported give it such weight as you think appropriate." III VRP at 476.

The State continued with its closing argument and stated, "We have one of very few people—a handful of people with a manager's code—the Defendant. One person in the store is exactly five feet tall—the Defendant." III VRP at 485. Yamauchi's attorney again objected to facts not in evidence, the trial court again overruled the objection.

The jury found Yamauchi guilty as charged. She appeals.

## ANALYSIS

### I.  STANDARD OF REVIEW

To prove that the State committed prosecutorial misconduct, a defendant must show that the prosecutor's statements were improper and that those statements caused prejudice. *State v. Lindsay*, 180 Wn.2d 423, 440, 326 P.3d 125 (2014).  We review allegedly improper arguments "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given [to the jury]." *State v. Thierry*, 190 Wn. App. 680, 689, 360 P.3d 940 (2015).  During closing argument, the State has wide latitude to assert and express reasonable inferences from the evidence. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).  Juries are presumed to follow jury instructions absent any evidence to the contrary. *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 171-72, 410 P.3d 1142 (2018).

"To show prejudice, [the appellant] must show a substantial likelihood that the prosecutor's statements affected the jury's verdict." *Lindsay*, 180 Wn.2d at 440.  We review the prosecutor's conduct and whether prejudice resulted "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *State v. Monday*, 171 Wn.2d 667, 675, 257 P.3d 551 (2011) (internal quotation marks omitted) (quoting *State v. McKenzie,* 157 Wn.2d 44, 52, 134 P.3d 221 (2006)).

### II.  IMPROPER ARGUMENT

Yamauchi argues that the State committed prosecutorial misconduct when it improperly argued facts that were not admitted into evidence by arguing that "[i]t was an inside job and that left a very, very, small group of potential suspects.  And only one of those suspects kicks (sic) all

those boxes. The Defendant. Same height – only five feet. Same as the burglar." BIII VRP at 476. The State argues that the prosecutor's statements during closing argument were a reasonable inference from the record. We agree with the State.

As noted above, we review allegedly improper arguments of the prosecutor "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given [to the jury]." *Thierry*, 190 Wn. App. at 689.

During closing argument, the prosecutor argued that Yamauchi was five feet tall which is a reasonable inference to make from the admitted evidence. Detective Day testified that he measured the security stanchions which the burglary suspect walked through in the surveillance video. He testified that the stanchions were five feet tall which was the same height as the suspect in the video. He further testified that his investigation focused on Yamauchi in particular because of her stature which was the most direct evidence of her involvement. The store manager also testified that the person in the video was a short person and that the person would have had store keys and alarm codes in order to access the cash room. The State also presented other evidence of Yamauchi's motive, opportunity, and ability to commit the crime. Thus, when the prosecutor argued that Yamauchi was five feet tall and the same height as the burglar, this was a reasonable inference from the admitted evidence.

Because the prosecutor's statement during closing argument was a reasonable inference from the admitted evidence, we hold that the prosecutor did not make an improper argument.

### III. PREJUDICE

Yamauchi argues that the prosecutor's improper closing argument about her height prejudiced her because there was a substantial likelihood that the improper argument impacted the

5

jury's verdict because there was no direct evidence about her height. The State argues that Yamauchi was not prejudiced because the statements were supported by the admitted evidence presented to the jury. We agree with the State.

As noted above, "[t]o show prejudice, [the appellant] must show a substantial likelihood that the prosecutor's statements affected the jury's verdict." *Lindsay*, 180 Wn.2d at 440. We review the prosecutor's conduct and whether prejudice resulted "by examining that conduct in the full trial context, including the evidence presented, 'the context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury.'" *Monday*, 171 Wn.2d at 675 (internal quotation marks omitted) (quoting *McKenzie,* 157 Wn.2d at 52). Prejudice is not a question of whether sufficient evidence exists to uphold a verdict. *Glasmann,* 175 Wn.2d at 711. One way to determine if the State's statements were prejudicial is whether the jury was instructed in a manner that could have cured any alleged misconduct. *Phelps*, 190 Wn.2d at 171-72. Juries are presumed to follow jury instructions absent any evidence to the contrary. *Phelps*, 190 Wn.2d at 171-72.

First, as discussed above, the prosecutor's closing argument about Yamauchi's height was a reasonable inference from the admitted evidence and testimony. That testimony includes the testimony of Detective Day, Smith, and Armstrong which corroborate Yamauchi's height was the same as the burglar in the video. When the allegedly improper statements are viewed in light of the entire trial, evidence presented, issues, and the court's instructions, there is not a substantial likelihood that the prosecutor's statements affected the jury's verdict.

Second, the court's instruction to the jury cured any alleged prejudice. Immediately following Yamauchi's objection to the alleged improper statements, the trial court instructed the

jury that "statements by counsel if not supported by evidence, disregard it. If it is supported give it such weight as you think appropriate." III VRP at 476. Because the jury is presumed to follow the court's instructions absent evidence to the contrary, any alleged prejudice was cured, and Yamauchi fails to show prejudice.

Because the prosecutor's closing argument about Yamauchi's height was a reasonable inference from the admitted evidence, we hold that the statements were not improper. Because the trial court gave a curative instruction, we hold that Yamauchi fails to show prejudice.

CONCLUSION

We hold that, because the State neither made an improper argument nor prejudiced her during closing argument, Yamauchi's claim fails. We affirm her convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

MARTIN, J.P.T.